Councils who are going to argue this matter, please step forward and state your names. Good morning. Robert Brown on behalf of the defendant appellants. John Schmidt from the Attorney General's office on behalf of the plaintiff, I believe, your honors. Okay. All right. So we'll allow 15 minutes a piece. Appellant, you want some time for rebuttal? Please, your honor. How much time? 10 minutes. 10 minutes. Okay. Well, he means out of your 15 minutes. Out of your 15 minutes. How about 4 minutes, 4 or 5 minutes? All right. 5 minutes. All right. Okay. Think about 2. All right. You may proceed. Good morning. May it please the court, Robert Brown on behalf of the defendant appellants. I think it would help us all if I just described a brief history of this bill. Well, we're familiar with the facts of the case. Then I'll just move on. The issue that we believe is submitted to the court today is whether the attorney general may state a claim of violation of the Illinois Human Rights Act or the IHRA pursuant to a reverse redlining theory where it did not allege that the defendant influenced or dictated the terms or conditions of the extension of any credit. Well, let me ask you a question. Under 3102, basically from what I could tell in your argument is that you're looking for a very narrow, narrow interpretation. Is that correct of the statute? In terms of 3102, your honor? Yes. I think what we're looking for is a 3102B. In terms of 3102B, I think what we're looking for is an interpretation of the definitions in that statute to apply correctly. And the allegations in the complaint don't meet the definitions. The allegations against the defendants don't meet the definitions in 3102. But we are looking for a narrow interpretation of 3102B. If we're looking for an interpretation and determination or definition of the terms, don't we have to look at it broadly then? Or narrowly? Well, I think if we look at it too broadly, there may be situations where the, you know, for instance, the FLEs are promoting the definition of real estate brokers as a very broad interpretation. If we interpret that term very broadly, then I think any real estate attorney in Illinois who sits down at a closing could be considered a real estate broker. So I think we have to narrow the scope of these interpretations because if we apply broad interpretations to these definitions and 3102B, then it becomes a catch-all for all types of individuals that not necessarily Would you also take the plain and ordinary meaning of the statute and apply it? That's correct, Your Honor. Isn't that what the courts do here? That's correct. That's correct. And a real estate broker doesn't have to be, you know, under this statute to be licensed a real estate broker? That's correct, Your Honor. All right. But I think here Therefore, anybody who deals in a real estate transaction, which the statute says should be covered under this act. Isn't that true? Well, and I think that's accurate, but I think here the defendants are not dealing in a real estate transaction. And more, you know, I also would posit that What kind of transaction is it? Well, it's what's called a mortgage restructuring or what the Attorney General calls it. Well, isn't that real estate? Doesn't that have to deal with real estate? It doesn't in this instance, Your Honor, because what is not happening here is there's no transfer of real estate, an interest in real estate. Well, does it say transfer under the plain and ordinary meaning of the act? Is the word transfer there? No, it's not, but that's what the Attorney General posits, that there is a transfer of interest, but there's no real estate. You helped or your client assisted individuals with short sales, correct? Well, and that's an excellent question, Your Honor. Did they do it or did they not? No, what they did is they, one of the options they offered is advising clients on short sales. And what they actually do is not the short sale. They don't sell, rent, exchange, lease, or lease into their property. But they did assist and advise individuals with guarding short sales. And they do, but what they do is the short aspect. What's the short aspect? The short aspect is what they may potentially do is contact a lender and see if a lender will approve a short sale payoff. Isn't that the participation in a real estate transaction? It's not, Your Honor, because no real estate is being conveyed in that transaction. Because in a short sale, isn't the borrower transferring the title of the property to the lender, even though it's not for its value? Isn't there still a transference? No. It's the same thing like a regular real estate transaction. There really is no property being transferred.  Actually, when a short sale occurs, the purchases actually be done by a third party. The real estate transaction, the property actually goes to a third party. But you even said it's a real estate transaction. Well, the short sale is. The short sale part of it is a transaction. But my clients aren't involved in the sale part. They're merely involved in the short part of that. They merely seek the approval of the lender for a short sale payoff. And then they seek the approval of the lender if there's any questions. That's the distinction. You say that they seek out the lender, they have a conversation with the lender, but yet they're not involved in a real estate transaction? It doesn't sound like to me like it's a real estate transaction. Well, I think there's a fine distinction to be drawn here because they're not actually selling, listing, exchanging, offering for sale. Then why are they talking to the lender? Because in the short sale, what's happening is that the property is potentially in foreclosure. The consumer is behind in payments on the mortgage. So what the defendants do is they, as a law office, they represent the consumer in negotiations with the lender. But it's not part of the sale transaction. It's not part of a real estate transaction. Whatever you want to call it, it's still a real estate transaction because they're engaged in the exchange of documents representing what is a piece of property. Which is a real estate transaction. Let's take it this way. What if the defendants, what if all they did was talk to a lender? Would that still be a real estate transaction? I'm not going to tell you. It wouldn't because a real estate would never be sold. So there would be no short sale. So you're saying a real estate transaction is when the entire transaction is completed? No. What I'm saying is a real estate transaction, under that Section 102B definition, under the IHRA, deals with the sale, exchange, the rental, the lease, the listing of real property. My clients don't do that. My defendants don't do that. I'm sorry. I'm going to let you finish that sentence because I wanted to get to a different part of B. You're talking about the first part of B. And you don't address the last part of it. The last part of B? The last part. It says, it talks about sale, exchange, rental, or leasing of real property. It also includes brokering and appraising of real property. The making of purchases of loan. And then there's an or. Right. Providing other financial assistance. Right. And my question is, why isn't this providing other financial assistance when they are helping someone either to modify their loan, hopefully, or to help them achieve a short sit? Right. Why aren't they providing other financial assistance to help them keep their home? Or not to lose as much money as they possibly, or not be on the hook for as much money as possible because they are helping them to have a short sit? Right. And I think, you know, the key is providing financial assistance. And our interpretation of that would be providing some kind of credit, money, extension of credit. And the defendants don't do that. I mean, isn't that a narrow definition of providing financial assistance? If you're talking to me and I want to invest my money and you're telling me how to invest my money, you're not giving me money, but you're giving me assistance in how to invest my money to make more. Right. And our position would be that it's not financial assistance. We're not assisting the client with any type of finances. What we're assisting the client to do is look at all the potential options they have in a mortgage restructuring situation. And they don't provide, the defendants do not provide any financial assistance. And I think more to the point, nowhere in the Fourth Amendment complaint, the operative complaint, is that alleged. It's just simply not alleged anywhere in the complaint. And I think, you know, the questions that the court is raising are all valuable questions and they go to this, the Section 102B argument. And that argument, and I think we've already addressed the short sales, and I think the AG also addresses a couple other issues. They also raise. Let me ask you this question. Isn't the bottom line here going to be whether your client's conduct was illegal conduct towards a consumer? Isn't that what it's going to end up to be? I think that's the correct bottom line. So it's not going to be this statute. It's going to be another statute. And they're going to have to be able to defend their conduct one way or the other, right? That's correct. So whatever statute it is, if they did nothing wrong, they have nothing to worry about. It's only if they did something wrong that they have something to worry about. That's correct, Your Honor. Okay. And under this statute, it's just one of many statutes that the Attorney General could have picked for people who they claim are, you know, claim that their conduct is illegal towards a consumer. That's right. That's right. But we don't feel that we fall under this statute, that the conduct that the defendants have done falls under this statute. No, no, no. I understand that that's what you feel. You know, and we'll have to make that determination, and I think it will probably be made based on the plain and ordinary meaning of the statute. And I think if you look at those plain and ordinary meanings of the statute, that what is actually occurring here, and remember, here's the fundamental thing. When the consumers approach the defendants, they already own the home. They've already been extended credit. They already own the home. So there's really no transaction that occurs. The consumers already own the home that's at issue. There's no forms to be filled out, no documents to be signed, no exchanging of titles. No, there's no exchange of titles. In fact, the federal government has indicated that modifications is not an extension of credit. I'm not saying a credit. I'm not saying a credit. In a normal real estate transaction, you have the exchanging of documents, promises being made. It's like a simple contract. There's an offer, there's an acceptance, and there's a consideration. So the short sale is the same scenario. There's an offer, there's an acceptance, and there's a consideration. Now, the consideration may not be what necessarily the lender wants, but it's still a consideration that they're accepting. So where's the difference here? I mean, it looks like it's a basic contract scenario. In a regular real estate transaction, you have offer, acceptance, and consideration. And the same thing with the short sale. There's no difference. Right. And, again, it's that distinction. What's the distinction? The distinction between the sale and the short. So the distinction is the defendants are not selling, they're not exchanging, they're not leasing, they're not renting, they're not listing any type of real estate, real property. All they are doing is negotiating or seeking the consent of the lender for a short sale payoff. They're seeking the consent of the lender for any delinquency in that short sale payoff. And that's it. That's it. They're not involved in any other aspect of the transaction. So they're not involved in a real estate transaction. And if you really think about it at the base, the house has already been acquired by the consumer. So there's no changing of title. There's no changing of interest here. The defendants are wholly removed from that transaction, and their own approach after that transaction has occurred by the consumer. Well, you're assuming, you know, that the definition of a real estate transaction is a change of title, and that may not be what a real estate transaction is under this statute. No, the real estate transaction definition actually states includes the sale, exchange, rental, or lease of real property. It goes on. There's another. That's right, Your Honor. Yeah, there's another. And it says, also includes the brokering or appraising of residential real property or the making or purchasing loans or providing other financial assistance. And Your Honor is correct. And it does for certain purposes. For certain purposes. Right. Right. But the point is, is that the defendants don't do any of that, and nor is any of that alleged in the complaint. There's just no allegations of that to support any assertion to this in the complaint. The short sale, again, there's a distinction to be drawn there. And just quickly, I'd like to address the reverse redlining claim. That was something that the Attorney General has argued not only in the trial court, but to this court in the answer to the application for leave and the motion for reconsideration. They've essentially abandoned that argument with their brief. They've functionally abandoned the reverse redlining. And now they seek just to apply the IHRA claim without reverse redlining. But even if they were still seeking to do the reverse redlining. I mean, we're only answering, whatever they're seeking, we're answering the question that has been certified. Right. And, Your Honor, as to the question certified, we have issues that was with the, in all due deference to the trial court, we don't believe that that question certified was appropriate. Because it didn't encompass all the issues that are before the court now. Well, the only issue before us is the certified question. And that's what's before us. And I understand that, Your Honor. And what I would say is that there are issues with that question. Because, first of all, the term mortgage lenders in that question, that term had never been presented in this case in the four years it's been pending. It's never been alleged. It's not in the complaint. It's never been in any of the previous complaints. It just came out of the ether. Well, did you raise an objection at the trial level when the trial judge formulated the question to be posed to this court? We did, Your Honor. And we did. On the basis of your objection. We suggested that the mortgage lender was not appropriate because that term had never been used, nor is it in the complaint. And additionally, we also suggested that her decision was based on the term mortgage broker. Her decision to deny the motion to dismiss was based on the term mortgage broker. And that term in itself has never been used in the complaint. So we raised those issues with the trial court. And she still presented this question. And as I was saying, I think the question presented doesn't encompass all that is before the court. And I think it's important that the court consider everything involved with reverse redlining. And it's not just mortgage lenders or mortgage brokers. As I stated the question before, what we believe the question to be is whether the defendant can be charged with a violation of the IHRA when the complaint does not allege that the defendants were involved in any aspect or they influenced any aspect of the terms or conditions of the loans, the extension of credit. And I think that's the appropriate question that should be before the court and the court should be addressing. What about your argument at the trial level with regards to the motion to dismiss that said that there wasn't enough facts to allege that you were sealing out certain communities within the city and the county? Your Honor, that's correct. We argued that in terms of the motion to dismiss, actually there were two motions to dismiss on this particular account. The first motion was actually granted. And it was granted based on the fact that the attorney general did not allege sufficient facts to state a claim for intentional discrimination and disparate impact or disparate impact. The second motion was denied after they revised their account for and amended the complaint. The second motion was denied, and we argued a very similar argument. And the attorney general came back with this reverse redlining theory. And the reverse redlining theory essentially takes out the intentional discrimination, disparate impact, and all they have to prove then is intentional targeting. And that was what Your Honor was referring to. And the intentional targeting in this case, the allegations in the complaint, are not sufficient to show intentional targeting. For instance, some of the allegations refer to only advertising to specific minorities, Latinos, African Americans. Well, other aspects of the complaint actually say that we don't just target specific minorities. One aspect, one allegation in the complaint actually states that we submit a marketing survey to all the consumers and they fill it out and some of the boxes they can check where they heard about the defendants were Internet or other means. So the Internet is not targeted to a specific minority. Everyone can access the Internet. Additionally, they claim that we're using only radio stations targeting certain minorities. Again, the radio stations are all accessible by the general public. Only certain people can't just tune into the radio stations. So Your Honor, I think that the allegations in the complaint don't support specific targeting under a reverse redlining theory. I know we're going on in this, but we're really off of what our issue is. And I appreciate that, Your Honor. And I just wanted to address the reverse redlining. But in terms of the Section 102B, again, I don't believe the conduct of the defendants falls within the definitions of real estate brokers or real estate transactions. There is no real estate transaction that occurs when the defendants offer mortgage restructuring. It just does not occur. If there were some kind of transaction that were occurring, then they would be subject to federal guidelines, and they're not. There's no federal guidelines that are applicable to the mortgage restructuring. And I think I would just leave it with that, that the defendants' conduct doesn't fall under the IRHRA or any of the definitions within that statute. Thank you. Counsel, you may proceed. Thank you, Your Honor, and may it please the Court. My name is John Schmidt, and I'm an assistant attorney general who represents the people. And we ask that the certified question be answered in the affirmative. The purpose of the Human Rights Act, of course, is to assure that all individuals are free from discrimination in areas such as employment and in housing. And this Court has previously held that illiberal construction of the Act is warranted in light of this purpose. And we feel that the language of the Act and its purpose of protecting people and also with regard to the housing provisions, there's a similar purpose to the Federal Housing Act, and that's to cover a broad range of activities that… I'm just going to interrupt you for a second. Counsel wants us to read the statute very narrowly. What's your response to that? Well, my response is that this statute serves a broad remedial purpose, and it should be read broadly to effectuate that purpose. I think this Court should do the opposite. Of course, it does need to read the language consistent with what it says, consistent with its plain language. But I think it is appropriate to do the opposite, to interpret it broadly. And as I was saying before, with regard to the housing provisions, to bear in mind that it's intended to cover a broader range of activities that might deny housing opportunities to people of protected groups. And that, I think, is exactly what we have here. We have a situation where there are already distressed homeowners, and charging them thousands of dollars for services which we have alleged to have little or no value is something that can deprive people of housing opportunities. And we feel that the targeting allegations are certainly sufficient to withstand a motion to dismiss. Yes, the radio stations they advertise on, of course, anybody can access them. But according to the Arbitron ratings that we mentioned in the complaint, between 97% and 99% of the listeners of those stations were either African American or Hispanic. And that, we feel, is a strong indication that those groups were targeted. Also the fact that 79 out of the 80 people who complained to our office, whose racial or ethnic identities were known, were either African American or Hispanic. There were 10 other people whose identities were not known. Mr. Brown mentioned that they also, Mr. Wildermuth, had a website. And a website, of course, is accessible to anyone. But even to some extent, the internet advertising was somewhat targeted toward African Americans in this respect. The defendants used Mr. A.C. Green, a very prominent spokesperson in the African American community, who had a radio show on Soul FM. Mr. Green did ads for the defendants. He mentioned his website, and his website mentioned defendants and their services and referred people to them. So even the internet, to some extent, was targeted. And there's no way... If I could interrupt you for a minute. Of course. So one of the arguments that they're making is that since these individuals that they were representing already had credit, that therefore the defendants weren't engaged in any type of reverse redlining and weren't even engaged in any type of real estate transaction, because all they did was contact the lender. Well, we believe that there were still real estate transactions. There were still... that are related to real estate transactions. And I think it's difficult for them to argue that this type of service, helping people modify or restructure their loans, is not related or not connected with a real estate transaction. It is even arguably connected with the original real estate transaction, because it is... they are holding themselves out as providing a service that helps distressed homeowners keep their home and eventually gain title to it, which was the purpose of the original real estate transaction. And these loan modifications also affect interests in real estate property. Generally, a loan modification is going to involve reduction of the mortgage amount plus an extension of the payment period. So the company that provides the mortgage obtains a potential interest in the property for a greater period of time. Let me ask you a question. When they have a consumer sign a document so they can deal with the mortgage company, don't they become the agent of the consumer in that document? Yes, I believe they do. And they would even have some of the consumers sign powers of attorney. Right, because otherwise the mortgage house could never deal with them unless they had them sign that type of disclosure, that type of document, which would give them the right to, in effect, be their agent. That's absolutely correct, Your Honor. And isn't that an argument that you kind of missed in the brief? I mean, if they're already the agent of the consumer dealing with their real estate, that's a real estate transaction within itself? Yes, I think that's an excellent point, Your Honor. And, yes, that's something I should have mentioned or certainly should have emphasized more. And we did allege in the complaint that the consumers really didn't deal. They really, as Your Honor pointed out, signed over to the defendants the right to deal with these companies, these financial institutions in their name. And, you know, I believe we attached Ms. Ramirez's power of attorney and we alleged that it was really the defendants and not the consumers who dealt with the financial institutions and who submitted the paperwork for these loans. And we believe that what the defendants are doing is relying on case law under Section 3605 of the Fair Housing Act and saying, well, it's not reverse redlining under that case law. Therefore, the attorney general does not state a cause of action. But Section 3605 of the Fair Housing Act defines their definitions, limit that provision to situations where credit is extended. So this may or may not state a cause of action under Section 3605. It would, however, very possibly state a claim under 3604, which has broader language and has the kind of language that's in Section 3102B, which discusses services related to real estate transactions. Our Human Rights Act really would encompass both 3604 and 3605. So their argument that it wouldn't, in effect, that it wouldn't state a claim under 3605, we don't believe that really holds water. So I think in light of the language of Section 3102 and the broad construction that this Court should give it to accomplish its remedial purpose, we ask that the certified question be answered in the affirmative. And we maintain that Count Ford does state a cause of action under the Human Rights Act. Thank you. Thank you, Your Honors. Bob? Just briefly, Your Honors. I'll keep it under two minutes. It struck me as I was listening to Appellee, the Attorney General's counsel, the purpose of Section 102 is to provide equal access to housing, to prevent anything that denies equal access to housing. And the defendants, they have no possible scenario where they prevent that equal access to housing. The consumers who come to them already own the houses. They already have title to the houses. They purchased those houses before they even heard about the defendants. And defendants would never even know about the consumers with these houses unless the consumers approached them. So the consumers already have title to these houses. So there's no possible scenario where the defendants are preventing the access to housing. And so, I mean, consumers... You're using a phrase that the consumers contact them, okay? But they go out to the consumers and give them certain information that may not necessarily be true concerning real estate. They're not dealing with their dog or their cat. They're dealing with real estate. Right. And I guess, Your Honor, I'm trying to understand what information they provide is not true. There's no allegations that the information that they're providing isn't true. The allegation is that you offer them restructuring to people who obviously don't qualify or are not eligible. From what my recollection is, that's one of the allegations. That is something that you routinely do. You charge them fees and tell them that they're going to get a certain amount of their money back and then you don't give them their money back. Right. There's a lot of other ones exploding in my head, but those are the allegations. We're really not dealing with the allegations here. We're trying to answer, though, the questions that the court posed to us. Right. And I think in looking at that question, even if it's a question that was certified by the court, I think the answer should be no, a definitive no, because the defendants aren't participating in a real estate transaction. And the Attorney General's counsel indicated that they were provided services related to the transaction, the real estate transaction. Well, the real estate transaction had already occurred. The consumers had already purchased the home. They were in receipt of the home. You've given us that argument. I want to ask one more question. Sure, Your Honor. And this is taking a little bit past your two minutes, but even though there is a real estate transaction, the person bought their home. They go into foreclosure. When they come to you and they want to maintain their dwelling, and that's part of that second part of that definition, you don't think that this statute can be read to include you as someone who is providing financial assistance by the way of getting them this remodification of their home in order to maintain their dwelling. You don't think that that fits within it? No, and I think the maintaining the dwelling goes to, in terms of upkeep, meaning fixing it. I hear you saying that, but does the statute limit itself? No, but the statute doesn't define maintaining. Exactly. And if it's to be broadly read, why would we take your narrow interpretation rather than a broader interpretation that maintains this to keep my house? Because, as I said before, the purpose of the statute is to protect people's opportunity for housing. Right. And that's not. To keep their home. Right. To get them to keep it. Right, and the defendants are not denying that opportunity to housing, nor are they denying the consumer's right to keep their housing. None of the services that the defendants offer do that. The consumers who come to them already own the house. It's their house. So there's no denial of housing opportunity here. What is being modified in the modification? In the modification, the terms of the. . . What is being modified in the modification? Well, it depends. There could be quite a few things. The topics that we're speaking of today. What is being modified in the modification? Are we talking about a short sale? Are we talking about. . . No, the first. . . Just so you can get you. . . Your property. . . Get a shorter note. . . I mean a smaller note and a longer term. Right, so there are multiple options to a modification. What is being modified in the modification? So the loan. . . The loan. . . The terms of the loan are being modified. But, again, that does not fall under the terms. . . The real estate transaction. And more. . . I think more significantly. . . The defendants don't have any say in what the modification actually is. They can make suggestions to the lender. But the lender is the ultimate source of what those terms will be. So the lender is responsible for those terms. It is not the defendants. The defendants are merely acting as advocates of the consumer. And so they do not offer those terms. And the defendants are stuck with the lender who they have. They have to go to that lender. They can't choose multiple other lenders. They have to deal with that lender. And the lender has the ultimate say. And I'm beyond my two minutes, and I apologize. If you want to sum up, you can sum up. Your Honor, I would just ask that the question be answered in the no. . . Or in no. . . And that the case be reversed. . . The denial be reversed and remanded to the trial court with instructions to dismiss Count 4. Thank you. Thank you. Okay. The court wants to thank counsels on a well-argued matter. The court is going to take this under advisement, and the court is adjourned.